UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVID A. HINES                          )
                                        )
      Appellant,                   )
                                        )   CASE NO. 3:09-cv-1175-MEF
v.                                      )            (WO)
                                        )
ANTHONY J. MARCHETTI, *et al.*,         )
                                        )
      Appellees.                   )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause is before the Court on appeal from the United States Bankruptcy Court for

the Middle District of Alabama.[1] David A. Hines, the appellant and debtor in the underlying

bankruptcy case, appeals the bankruptcy court's partial grant of summary judgment in favor

of Anthony J. Marchetti and West Georgia Emergency Medicine, LLC ("WGEM"), the

appellees and creditors in the underlying bankruptcy case (collectively, the "Appellees").

Hines' appeal requires this Court to decide whether there is an issue of material fact

regarding Hines' intent when he transferred property within one year of his bankruptcy filing.

 The Appellees contend that Hines should be denied a discharge because he violated 11

U.S.C. § 727(a)(2)(A) by transferring property with the intent to hinder, delay, or defraud a

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 158, which provides that the
district courts of the United States "shall have jurisdiction to hear appeals from final judgments,
orders, and decrees . . . of bankruptcy judges."

creditor within one year before he filed for bankruptcy.   Because this Court concludes that there is no issue of material fact regarding Hines' intent, the bankruptcy court's decision is AFFIRMED.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The following facts are undisputed.  Hines and Marchetti are both medical doctors who previously practiced medicine together as members of WGEM.  Hines was the manager of WGEM and controlled the firm's books and records.  In December 2005, Marchetti and WGEM brought suit against Hines in the Superior Court of Troup County, Georgia alleging that Hines misappropriated WGEM's funds and wrongfully refused Marchetti access to WGEM's books and records.  The lawsuit was referred to arbitration, and on November 26, 2007, the arbitrator awarded Marchetti and WGEM approximately $667,000 in damages and attorney fees.  A Georgia state court confirmed the arbitrator's award by a judgment entered on December 21, 2007.  On January 28, 2008 (the "Filing Date"), Hines filed a voluntary petition for bankruptcy under chapter 7 of title 11 of the United States Code.

It is also undisputed that Hines transferred property within the year before the Filing Date.  These transfers can be divided into three categories.  The first category involves transfers of property from David A. Hines, MD, PC ("Hines PC") to David A. Hines, MD, LLC ("Hines LLC").  Hines PC was a professional corporation formed by Hines in 2000 in which  Hines owned a 100% interest. Hines LLC is a limited liability company that Hines formed on October 20, 2007 – just weeks before the Georgia arbitration began. In November

2

2007, approximately two months prior to the Filing Date, Hines transferred all of Hines PC's assets consisting of office supplies, two vehicles, and at least $32,000 to Hines LLC.  Hines owns a 25% interest in Hines LLC and Hines' wife, Irma J. Hines, owns a 75% interest in Hines LLC.  Hines PC received no consideration for the transfer of assets to Hines LLC. Hines PC was dissolved on January 24, 2008, only days before the Filing Date.

The second category involves transfers of property from Hines to Mrs. Hines within the year before the Filing Date. The Appellees identified over $68,000 in checks and bank deposits that were transferred from Hines to accounts owned solely by Mrs. Hines.  Of the $68,000, over $48,000 in checks payable to Hines were deposited into a Regions bank account owned solely by Mrs. Hines and opened less than two months prior to the Georgia arbitration.  The other $20,000 were transferred from an account owned jointly by Hines and Mrs. Hines to an account owned solely by Mrs. Hines.  In addition to transferring these funds, Hines also closed his existing bank accounts.  As of the date of the § 341 meeting of creditors, Hines did not have a single bank account in his name.  (Doc. #2-21, 60).  Hines testified at that meeting that he consolidated his bank accounts because of the litigation with Appellees.  (*Id.*).

The third category involves the transfer of two vehicles – a Ford Excursion and a Lincoln Navigator – to Hines LLC in January 2008 in the days leading up to the Filing Date. (Doc. #2-11; Doc #2-12). The parties present conflicting facts as to the ownership of the two vehicles prior to their transfer to Hines LLC.  Hines claims that the vehicles were owned by Hines PC prior to their transfer. In support of this claim, Hines points to payments made by

3

Hines PC to Ford Motor Credit and the fact that Hines PC listed the vehicles as assets of the corporation.   Hines also claims that the initials "PC" were mistakenly left off the title resulting in the vehicles appearing to be titled to Hines individually instead of Hines PC.

In contrast, the Appellees claim that the vehicles were owned by Hines individually before their transfer to Hines LLC.   The Appellees point to the fact that the certificates of title list Hines individually as the owner, that Hines listed himself and not Hines PC as the seller of the vehicles at the time they were transferred to Hines LLC, and that nearly $11,000 in payments on one of the vehicles came from accounts owned either jointly by Hines and Mrs. Hines or solely by Mrs. Hines. Regardless of their previous ownership, there is no indication in the record that Hines or Hines PC received any consideration from Hines LLC for the transferred vehicles.

### B.  Procedural History

On September 29, 2008, the Appellees commenced an adversary proceeding against Hines in the bankruptcy court by filing an eight-count complaint seeking to deny Hines' discharge in bankruptcy, or alternatively, to determine the dischargeability of the Appellees' unsecured debt. (Doc. #2-2). The Appellees then moved for summary judgment on the first four counts of the complaint, (Doc. #2-4), and on September 25, 2009, the bankruptcy court granted the Appellees' motion for summary judgment with respect to Count I.   The bankruptcy court held that Hines should be denied discharge because he violated 11 U.S.C. § 727(a)(2)(A) by transferring property within one year before his bankruptcy petition with the intent to hinder, delay, or defraud a creditor. (Doc. #2-34). The bankruptcy court denied

4

the Appellees' motion for summary judgment with respect to the other three counts in the motion. (*Id.*). Hines' current appeal challenges the bankruptcy court's grant of summary judgment as to Count I of the complaint.

## III. DISCUSSION

### A. Standard of Review

This Court reviews the bankruptcy court's entry of summary judgment *de novo*. *See In re Optical Tech., Inc.*, 246 F.3d 1332, 1335 (11th Cir. 2001) ("the district court . . . review[s] a bankruptcy court's entry of summary judgment *de novo*."). In doing so, this Court must draw all reasonable inferences in the light most favorable to the non-moving party. *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002).

### B. The Legal Standard for a Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable to the bankruptcy context by Federal Rule of Bankruptcy Procedure 7056, requires that summary judgment be granted if the moving party can show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In a motion for summary judgment, the moving party has the burden to establish that there are no genuine issues of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, at 324

5

(1986) (internal quotations omitted). In this effort, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (footnote omitted).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is material if it might affect the outcome of a proceeding under the governing substantive law. *Id.*

### C. Denial of Discharge Under 11 U.S.C. § 727(a)(2)(A)

#### 1. The Legal Standard for Denying Discharge

The bankruptcy court granted the Appellees' motion for summary judgment under § 727(a)(2)(A) and denied discharge of Hines' debt.  Section 727(a)(2)(A) provides that a debtor can be denied discharge if "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred . . . property of the debtor, within one year before the date of the filing of the petition." To sustain an objection to discharge pursuant to § 727(a)(2)(A), the objecting party must show the following elements by a preponderance of the evidence:

(1) that the act complained of was done at a time subsequent to one year before the filing of the petition or after the date of the filing of the petition;

(2) with intent to hinder, delay, or defraud a creditor of the property under the Bankruptcy Code,

(3) that the act was that of the debtor or his duly authorized agent, and

6

(4) that the act consisted of transferring, removing, destroying, or concealing

any of the debtor's property.

*See Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1339 (11th Cir. 2008) (citing

*Grogan v. Garner*, 498 U.S. 279, 289-91 (1991)).  When analyzing these elements, a court

should construe § 727's denial of discharge liberally in favor of the debtor.  *See Guerra v.*

*Fernandez-Rocha (In re Fernandez-Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006).

Turning to the facts of this case, it is undisputed that Hines made the three types of

transfers discussed above within a year of the Filing Date.  (Doc. #5, 5).  Consequently, there

is no dispute as to elements 1, 3, and 4. (Doc. #5, 8).  The only element in dispute is whether

Hines actually intended to hinder, delay, or defraud a creditor.  (*Id.*).  Since it is unlikely that

a debtor will admit that he intended to hinder, delay, or defraud a creditor, actual intent to do

so may be established by circumstantial evidence or by inferences drawn from a course of

conduct. *See In re Jennings*, 533 F.3d at 1339.  This circumstantial evidence is commonly

termed a "badge" or "indicia" of fraud.  "Courts have identified several indicia of fraud that

tend to show that a debtor had an actual intent to defraud his creditors." *Protos v. Silver (In*

*re Protos)*, 322 Fed. App'x 930, 936 (11th Cir. 2009). These indicia of fraud include:

(1) the lack or inadequacy of consideration for the property received;

(2) the nature of the relationship between the transferor and the transferee;

(3) whether the transferor retains possession, control, benefits, or use of the property

in question;

(4) whether the transfer resulted in insolvency;

7

(5) the cumulative effect of the debtor's transactions and course of conduct after the

onset of financial difficulties or threat of suit by creditors; and

(6) the general chronology and timing of the transfer in question.

*Id.*

Once the creditor introduces circumstantial evidence indicating the debtor's intent,

the debtor must respond with more than an unsupported assertion of honest intent. *See Matter*

*of Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987) (abrogated on other grounds by *Grogan*

*v. Garner*, 498 U.S. 279 (1991)).  Additionally, a court must weigh the debtor's assertions

of honest intent against the natural inferences from the admitted facts. *See* 4 Collier on

Bankruptcy ¶ 523.08[2][e][ii], p. 523-51 (16th ed.).

### 2. Evidence of Hines' Intent

In the Court's view, there is direct evidence of Hines' intent to hinder, delay, or

defraud a creditor when he transferred property.  For example, at the meeting of creditors

required by 11 U.S.C. § 341, Hines testified that "due to litigation matters" he "changed the

PC to an LLC."  (Doc. #2-20, 30).  Additionally, when asked why he had consolidated his

bank accounts, Hines testified that he had done so because of the litigation with Marchetti.

(Doc. #2-20, 60).  The reasonable inference from these statements is that Hines' actions were

intended to prevent, or at least complicate, Appellees' efforts to collect money from Hines.

These undisputed statements are direct evidence of Hines' intent and are sufficient to deny

discharge.  *See In re Kontrick*, 295 F.3d 724 (7th Cir. 2002) (on similar facts, the Seventh

Circuit affirmed denial of discharge under § 727(a)(2)(A) after the debtor, a discontented

8

partner in a medical practice, admitted he transferred money to his wife's account and closed out his own bank account to avoid creditor claims); *In re Schafer*, 294 B.R. 126 (N.D. Cal. 2003) (affirming the bankruptcy court's denial of discharge after the debtor admitted that by placing his funds in a new account he intended to prevent his creditor from attaching to his funds).

Even if the Court is mistaken about the inference it draws from Hines' testimony, there is plentiful circumstantial evidence – or badges of fraud – from which to infer Hines' actual intent to hinder, delay, or defraud a creditor.

There are several badges of fraud present in the transfers from Hines PC to Hines LLC.  As an initial matter, even though this property belonged to Hines PC before the transfer, the Court construes it as Hines' property because Hines controlled Hines PC.  *See In re Adams*, 31 F.3d 389, 394 (6th Cir. 1994) (affirming a district court's characterization of corporate account receivables as property of the debtor because the debtor controlled the corporation).[2] Moving to the badges of fraud present in the transactions, first, Hines PC received no consideration from Hines LLC for the transfers of property.  Second, the transfers occurred within one year of the Filing Date. Third, the transfers were to an entity – Hines PC – in which Hines  owned a minority interest and Mrs. Hines, an insider, owned a majority interest.  Fourth, all of the transfers occurred after the onset of difficulties with

---

[2] *See also In re Rodriguez*, 2008 WL 3200215 * 7 (S.D.N.Y. 2008) (stating "[t]here is authority that an individual debtor causing his wholly-owned corporation to transfer property can provide a basis for a denial of discharge under § 727(a)(2)(A).").

Marchetti and, according to Hines, "due to litigation matters." (Doc. #2-20, 30-31). Fifth, Hines retained use of the property after the transfers. Finally, the overall effect of these transfers was to divest Hines PC of all assets and, prior to the Filing Date, transfer those assets to a newly-formed entity in which Hines had an interest. This undisputed circumstantial evidence creates a strong inference that Hines actually intended to hinder, delay, or defraud the Appellees.

The Court next looks at the transfers from Hines to Mrs. Hines. Hines argues that he did not realize at the time he completed the Statement of Financial Affairs accompanying his bankruptcy petition that these transactions should have been denoted as transfers. (Doc. #5, 13, 14). Thus, Hines argues, he did not intentionally misrepresent himself under oath and should not be denied discharge. Hines' argument is beside the point. Count I, on which the bankruptcy court granted summary judgment, alleges a violation of § 727(a)(2)(A) which concerns transfers of property, not false oaths.[3]  Under § 727(a)(2)(A) the Court is only concerned with whether transfers were made within one year of the bankruptcy petition with the intent to hinder, delay, or defraud a creditor. Hines does not dispute that the funds were transferred. In addition, the transfers contained several badges of fraud indicating Hines' intent. These badges include transferring funds from Hines to Mrs. Hines, an insider, for no consideration within one year before the Filing Date. Further, the cumulative effect of the

---

[3] Hines' argument more closely approximates a defense to an allegation that he violated 11 U.S.C. § 727(a)(4)(A) which permits denial of discharge if a debtor "knowingly and fraudulently, in or in connection with the case" makes a "false oath or account . . ."

fund transfers was to consolidate Hines' banking and checking accounts prior to the Filing Date. Accordingly, there is a strong inference that Hines intended to hinder, delay, or defraud the Appellees when he transferred funds to Mrs. Hines.

Finally, the Court looks at the transfer of the vehicles to Hines LLC. As discussed previously, there is a conflict regarding the ownership of the vehicles prior to their transfer. Hines claims that Hines PC, and not Hines individually, owned the vehicles. In contrast, the Appellees contend that Hines individually owned the vehicles. However, the ownership of the vehicles is immaterial to whether Hines is entitled to discharge.[4] If the Court takes Hines' statements as true and assumes that the vehicles were owned by Hines PC before their transfer, then the vehicle transfers would fall into the first category of transfers consisting of property transferred from Hines PC to Hines LLC. As previously discussed, that category of transfers also violates § 727(a)(2)(A) and warrants denial of discharge. *See In re Adams*, 31 F.3d at 394. In other words, even if ownership of the vehicles is resolved in Hines' favor, the transfer of the vehicles would still contain several indicia of fraud indicating that Hines intended to hinder, delay, or defraud creditors in violation of § 727(a)(2)(A). First, the transfers occurred within one year before the Filing Date. Second, it is undisputed that neither Hines nor Hines PC received consideration from Hines LLC for the vehicles. Third,

---

[4] In Alabama, a certificate of title of a motor vehicle is prima facie evidence of ownership. *See* Ala. Code § 32-8-39(d) (1975). Therefore, the name as it appears on the title (in this case, Hines) is presumptive evidence of ownership, although that evidence is not conclusive. *Crowley v. State Farm Mut. Auto. Ins. Co.*, 591 So.2d 53, 55 (Ala. 1991) ("[A] certificate of title is not conclusive evidence of ownership, because ownership can be established by other evidence.").

it is undisputed that Hines retained use of the vehicles after the transfer.  Fourth, the vehicles were transferred from an entity owned entirely by Hines to an entity owned 25% by Hines and 75% by Mrs. Hines, an insider.  Thus, the ownership of the vehicles before their transfer to Hines LLC is immaterial to whether there was a violation of § 727(a)(2)(A) and it is not an issue suitable for trial.

In sum, the direct and circumstantial evidence in this case leads this Court to conclude that there are no genuine issues of material fact regarding Hines' intent to hinder, delay, or defraud the Appellees.

### D. Hines Argues That There Are Genuine Issues of Material Fact

In an effort to survive the motion for summary judgment Hines argues, as he must, that there is a genuine issue of material fact regarding his intent at the time of the transfers. Specifically, Hines argues that the transactions were a result of (1) an honest lack of sophistication regarding the rules of civil procedure and discovery (Doc. #5, 10); (2) an honest belief that he did not owe the Appellees any money (*Id.*, 10-11); and (3) good faith reliance on outside professionals (*Id.*, 11-12).  Finally, Hines argues that matters of intent are generally not appropriate for disposition by summary judgment and therefore the Court should deny the Appellees' motion.  The Court finds these arguments unpersuasive.

First, Hines argues that he lacked sophistication regarding the rules of civil procedure and discovery and thus did not have the intent to hinder, delay, or defraud a creditor.  The Court fails to see how ignorance of the rules of civil procedure and discovery is relevant to the issue of Hines' intent at the time he transferred property to Mrs. Hines and Hines LLC.

12

A knowledge of the rules of civil procedure or the rules of discovery is not necessary to avoid transferring property with the intent to hinder, delay, or defraud a creditor. Consequently, this argument has not created a genuine issue of material fact regarding Hines' intent.

Second, Hines argues that he honestly believed that he was not indebted to the Appellees. More specifically, he argues that whether or not he was indebted to the Appellees was still undetermined when he transferred property because the arbitrator had not yet entered an award for either party. Thus, Hines argues, he could not have intended to hinder, delay, or defraud a creditor at the time of the transfers. This argument also fails. There is no refuge for Hines in the fact that the arbitrator had not made a decision in the dispute between Hines and the Appellees. Transfers made in anticipation of litigation are not immune from the intent to hinder, delay, or defraud a creditor. *See In re Protos*, 322 Fed. App'x at 936 (indicating that "the cumulative effect of the debtor's transactions . . . after the onset of financial difficulties or threat of suit by creditors" is a badge of fraud); *see also Max Sugarman Funeral Home*, 926 F.2d 1248, 1254 (1st Cir. 1991) ("Among the more common circumstantial indicia of fraudulent intent at the time of the transfer [is] . . . (1) actual or threatened litigation against the debtor . . . ."). The undisputed facts indicate that the Appellees brought suit against Hines in December 2005. Hines effected all of the transfers discussed above after December 2005. In fact, the vehicles were transferred approximately one month after the state court confirmed the arbitrator's award. Further, Hines admitted that he transferred property to Hines LLC and consolidated his bank accounts because of the

litigation with Appellees. (Doc. #2-20, 30-31; Doc. #2-21, 60-62). The reasonable inference from this chronology is that Hines' actions were an attempt to at least hinder or delay the Appellees' efforts to reach Hines' assets. Therefore this argument fails to raise a genuine issue of material fact suitable for trial.

Relatedly, Hines argues that at the time of the transfer he believed that the Appellees' suit lacked merit and that the arbitrator would rule in his favor and therefore he did not have the requisite intent when he made the transfers. This argument constitutes little more than an assertion of honest intentions. In making this assertion Hines has not gone beyond the pleadings to provide any objective factual support. In fact, these assertions of honest intent are contradicted by Hines' testimony that the transfers were motivated by the litigation with the Appellees. At the summary judgment stage of the litigation, Hines was obligated to present more than just an unsupported assertion of honest intent. *See Matter of Van Horne*, 823 F.2d at 1287 (abrogated on other grounds by *Grogan v. Garner*, 498 U.S. 279 (1991)). Given the circumstantial evidence surrounding the transfers and Hines' admitted motivations, the Court finds that this argument fails to raise an issue of material fact.

Third, Hines argues that he relied on the advice of attorneys and accountants when deciding to form Hines LLC and transfer the assets of Hines PC to Hines LLC. (Doc. #5, 11). Hines claims that his reliance on outside professionals should absolve him of the intent to hinder, delay, or defraud a creditor. (*Id.*). There is evidence, however, that the outside professionals were aware of Hines' motivations when they advised him. For example, Hines concedes that "the litigation with Marchetti was the motivation behind the transition from

14

PC to an LLC." (*Id.*).   Hines also states that the professional advice Hines received "considered . . . the disputed claim by Marchetti." (*Id.*).   As Hines himself recognizes, reliance on outside professionals must be in good faith and not part of a scheme that the debtor knows will hinder or delay creditors.  (*Id.*); *see First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986).  The fact that Hines was motivated by the litigation to seek the advice of professionals and that those professionals were aware of the disputed claim with the Appellees effectively undermines Hines' argument that he relied in good faith and lacked the intent to hinder, delay, or defraud a creditor.

Hines argues that he will be able to demonstrate his credibility regarding his reliance on outside professionals if given the opportunity (presumably at a trial).  (Doc. #5, 12). However this argument is simply another unsupported assertion of honest intent which carries relatively little weight when compared with the large amount of circumstantial evidence of Hines' intent to hinder, delay, or defraud the Appellees.  Hines could have provided evidence of his honest intent by affidavit or deposition testimony, but he has not done this.

Lastly, Hines argues, and the bankruptcy court pointed out, that matters where intent is at issue are often not appropriate for disposition through summary judgment. (Doc. #2-34, 15).  While this principle may be generally true, in the bankruptcy context a summary judgment denying a debtor's discharge is sometimes appropriate even when intent is at issue. *See In re Heraud*, 410 B.R. 569 (Bkrtcy. E.D. Mich. 2009) (granting creditor's motion for summary judgment based on circumstantial evidence demonstrating debtor's actual intent

to hinder, delay, or defraud a creditor); *In re Freitas*, 261 B.R. 556 (Bkrtcy. D. Conn. 2001) (granting creditor's motion for summary judgment under § 727(a)(2)(A) and finding from "badges of fraud" that the debtor had the requisite intent to hinder, delay, or defraud creditors).[5]  After considering Hines' testimony and the many badges of fraud present in this case, there is no genuine issue of material fact as to whether the transfers were made with the actual intent to hinder, delay, or defraud a creditor within the meaning of § 727(a)(2)(A).

In sum, after carefully reviewing the documents in the record, the testimony of Hines, and the undisputed circumstantial evidence in this case, the Court finds that there is no issue of material fact in dispute regarding Hines' intent when he transferred property within one year before his bankruptcy. Therefore, having conducted a *de novo* review of the case, and having drawn all reasonable inferences from the underlying facts in the light most favorable to Hines, this Court finds that there is no genuine issue of material fact to be resolved at trial and the Appellees are entitled to judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED.

Done this the 30th day of August 2010.

---

[5] *See also Carter v. Trammell* (*In re Trammell*), 197 B.R. 309, 311 (Bankr. W.D. Ark.1996) (granting summary judgment denying discharge under § 727(a)(2)(A) on three separate grounds); *First Nat'l Bank v. Davison* (*In re Davison*), 2004 WL 2852352 * 4 (10th Cir. BAP 2004) (upholding grant of summary judgment denying discharge under § 727(a)(4)); *Johnson & Johnson, Fin. Corp. v. Gertsch* (*In re Gertsch*), 237 B.R. 160, 165 (9th Cir. BAP 1999) (upholding grant of summary judgment on intent to defraud requirement of § 523(a)(2)(B) and stating, "summary judgment is appropriate if all reasonable inferences defeat the claims of one side, even when intent is at issue.").

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE